**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CRAIG CUNNINGHAM on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : : | Case No. 1:17-cv-3605 |
| v. | : : : | |
| DHL EXPRESS (USA), INC., | : : | |
| and | : : | CLASS ACTION COMPLAINT JURY DEMANDED |
| DAYTON INTERNATIONAL, INC., dba INXPRESS CHICAGO, | : : : | |
| Defendants. | : : / | |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Craig Cunningham ("Mr. Cunningham") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Defendants initiated telemarketing calls to a cellular telephone number for the purposes of advertising their goods and services, using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Craig Cunningham is a resident of the state of Tennessee who received the calls originating from this district that are the subject of this action.

6. Defendant DHL Express (USA), Inc. ("DHL") is a company providing international courier, parcel, and express mail services and utilized InXpress Chicago to promote its services and act as its only authorized Global Reseller.

7. Defendant Dayton International, Inc. ("InXpress") does business under the name InXpress Chicago and holds itself out as the only authorized Global Reseller of DHL's services and has its principal place of business within this district at 650 Kendridge Court, Aurora, Illinois.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because one of the Defendants is a resident of this district and a substantial part of the events or omissions giving rise to the claim occurred in this district as the telemarketing calls that gave rise to the Plaintiff's claims originated here.

**The Telephone Consumer Protection Act**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

3

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

15.     DHL and InXpress provide shipping freight and logistics services.

16.     To generate new clients, DHL and InXpress rely on telemarketing.

17.     One of the telemarketing strategies implemented by InXpress to sell DHL's services involves the use of an automatic telephone dialing system ("ATDS") to solicit potential customers.

<u>Calls to Mr. Cunningham</u>

18.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19.     Mr. Cunningham is the owner of a cellular telephone number, 615-212-XXXX.

20.     InXpress, on behalf of DHL, placed multiple automated telemarketing calls to Mr. Cunningham on February 22, 2017.

21.     The Caller ID for the telemarketing calls was blocked by the dialing system.

4

22. However, by engaging with the telemarketer who had initially attempted to obfuscate the source of the calls, Mr. Cunningham was able to identify the caller as InXpress Chicago who was calling to solicit business for DHL.

23. When the calls were answered, there was a lengthy pause and a click followed by silence, which indicated to the Plaintiff that the calls were made using an ATDS.

24. Further indicating that the calls were made using an ATDS was the (1) geographic distance between the Plaintiff and the Defendant and (2) the generic and scripted telemarketing pitch that the Plaintiff received on the calls.

25. Confirming that he was sent these autodialed calls by InXpress and DHL, the Plaintiff received an e-mail solicitation from InXpress offering DHL's services after the calls.

26. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

27. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

28. Other individuals have also complained about the telemarketing tactics used by InXpress to sell DHL's services. *See, e.g.*, http://800notes.com/Phone.aspx/1-801-921-6699 (Internet user "mike scott" complaining about "Cold calling boiler room telemarketers trying to sell shipping services") and http://800notes.com/Phone.aspx/1-206-201-1926 (multiple individual Internet users complaining about telemarketing by InXpress of DHL services).

## Class Action Allegations

29. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

30. The class of persons Plaintiff proposes to represent are tentatively defined as:

All persons within the United States: (a) to whom Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

31. Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

32. The class as defined above is identifiable through phone records and phone number databases.

33. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

34. Plaintiff is a member of the proposed class.

35. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using an ATDS to call cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior consent for the calls; and

        c.      Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

36.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

37.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

38.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

39.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

40.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

41.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling Provisions

42. Plaintiff Cunningham incorporates the allegations from all previous paragraphs as if fully set forth herein.

43. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS.

44. As a result of Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

45. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

46. The Defendants' violations were negligent and/or knowing.

### Count Two:
### Violations of the Illinois ATDA, 815 ILCS 305/1 *et seq.*

47. Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.

48. The Illinois Automatic Telephone Dialers Act ("ATDA") prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

8

49. Section 15 of the Illinois ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

50. While Defendants' service or equipment was capable of allowing the display of its telephone number, Defendants prevented the calling number from being disclosed during its calls to Plaintiff and the other members of the class.

51. In Plaintiff's case, for example, although the number was capable of being displayed, the caller ID displayed to Plaintiff was instead stated as "Unknown Caller."

52. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the class were harmed and are each entitled to statutory damages of $500 per violation, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and the Illinois ATDA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the class of damages, as allowed by law;

9

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Lauren E. Snyder (6293832)
1350 N. Wells Street, Apt. A214
Chicago, IL 60610
(419) 344-1146
lauren.elizabeth.snyder@gmail.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com
ted@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

10